KAREN NELSON MOORE, Circuit Judge,
dissenting.
During his trial, Zayd Allebban argued two alternative defensive theories: that he lacked the requisite intent to obstruct justice and that he was entrapped into doing so by the inducement of a government agent. The district court instructed the jury on Allebban’s first defense, but refused to give an instruction on entrapment. R. 70 (Feb. 14 Trial Tr. at 16) (Page ID # 1588). A defendant is “entitled to an entrapment instruction ‘whenever there is sufficient evidence from which a reasonable jury could find entrapment.’ ” United States v. Khalil, 279 F.3d 358, 364 (6th Cir.2002) (quoting Mathews v. United States, 485 U.S. 58, 62, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)). He must provide evidence to support the conclusion that the government induced the defendant to commit the crime and that the defendant lacked any predisposition to engage in criminal activity. United States v. Poulsen, 655 F.3d 492, 502 (6th Cir.2011). Because I conclude that Allebban had presented sufficient evidence from which a jury could reasonably conclude that he was entrapped, I respectfully dissent.
First, the record contains ample evidence that Philip Shisha, an agent of the government, improperly induced Allebban to commit the crime by preying on their friendship and emotional ties. The Supreme Court has suggested that the “resort to sympathy” between friends is one form of improper inducement. Sherman v. United States, 356 U.S. 369, 373, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); see also id. at 384, 78 S.Ct. 819 (Frankfurter, J., concurring) (“Particularly reprehensible in the present case was the use of repeated requests to overcome petitioner’s hesitancy, coupled with appeals to sympathy based on mutual experiences.”); see also United States v. McLernon, 746 F.2d 1098, 1114 (6th Cir.1984) (finding improper inducement, in part because the government agent “prey[ed] upon the love and loyalty of [their] special relationship” as “blood brothers”). In the instant case, Shisha made numerous appeals to Allebban’s sense of friendship in an effort to induce him to provide a false receipt: Shisha claimed to be suicidal, indicated that “[h]e was close to bankruptcy,” and worried over his father’s deteriorating health. R. 67 (Feb. 11 Trial Tr. at 82-84) (Page ID # 1249-51); R. 68 (Feb. 12 Trial Tr. at 98-99) (Page ID # 1394-95). Shisha testified that his purpose in appealing to Allebban’s personal connection with him was to pressure Allebban into complying with his suggestions: “I showed to Mr. Allebban that I am worried so he could be helpful to get me the information that I needed.” R. 66 (Feb. 8 Trial Tr. at 28) (Page ID # 1001). This type of inducement is impermissible, and indeed the district court acknowledged that Shisha’s emotional pressure “may *509 have gone too far.” R. 70 (Feb. 14 Trial Tr. at 13) (Page ID # 1590). Therefore, on balance, I believe that there was sufficient evidence of inducement to support Allebban’s request for an entrapment instruction.
Second, Allebban has provided sufficient evidence to demonstrate that he was not predisposed to engage in criminal activity “before his initial exposure to government agents.” United States v. Barger, 931 F.2d 359, 366 (6th Cir.1991) (internal quotation marks omitted). “Predisposition, the principal element in the defense of entrapment, focuses upon whether the defendant was an ‘unwary innocent’ or, instead, an ‘unwary criminal’ who readily availed himself of the opportunity to perpetrate the crime.” Mathews, 485 U.S. at 63, 108 S.Ct. 883 (internal quotation marks and citations omitted). We have identified five factors that a court must weigh to determine whether a defendant was predisposed to commit a crime: “(1) the character or reputation of the defendant, including any prior criminal record; (2) whether the suggestion of the criminal activity was initially made by the Government; (3) whether the defendant was engaged in the criminal activity for profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and (5) the nature of the inducement or persuasion supplied by the government.” Khalil, 279 F.3d at 365. On each of these five factors, there is record evidence supporting Allebban’s lack of predisposition.
First, there is ample evidence that Al-lebban, who has no prior criminal history, was considered by members of his community to be a “law-abiding” person who “generally intends to do the right thing.” See R. 69 (Feb. 13 Trial Tr. at 90, 96, 113) (Page ID # 1550, 1556, 1573). Second, a reasonable jury could conclude from the record that it was a government agent who initially suggested the criminal activity to Allebban. The majority opinion concludes that the record does not support Allebban on this factor because Tahir Kazmi, who was not a government agent, first raised the idea of creating a receipt to Shisha. However, the relevant question is whether a government agent initially suggested the idea of criminal activity to the defendant. Shisha testified at trial that, although Kaz-mi first raised the idea of a receipt with him, Shisha “brought it up” to Allebban by telling Allebban that Shisha needed to have something to show his attorney to explain the payments made to Kazmi. R. 67 (Feb. 11 Trial Tr. at 56) (Page ID # 1223); see also R. 68 (Feb. 12 Trial Tr. at 121-22) (Page ID #1417-18). Third, Allebban did not directly profit from the criminal activity because it was Kazmi who was the beneficiary of Shisha’s payments. See R. 70 (Feb. 14 Trial Tr. at 60) (Page ID # 1637).
Fourth, there is some evidence that Al-lebban was initially reluctant to create the receipts, and that he agreed to do so only after Shisha told him several times that Shisha was stressed and suicidal and that he needed to have an explanation for the payments. Indeed, in response to one of Shisha’s early requests for a receipt, Alleb-ban stated that Shisha “shouldn’t lie” to his attorney about the payments. R. 67 (Feb. 11 Trial Tr. at 67) (Page ID # 1234). It was only after Shisha impressed upon Allebban that he was considering suicide that Allebban agreed to create a receipt to help him “calm down [and] get out of that crazy thinking mode about killing yourself and move on.” R. 68 (Feb. 12 Trial Tr. at 128) (Page ID # 1424). Finally, as I have already discussed, the nature of Shisha’s inducement was “reprehensible.” Sherman, 356 U.S. at 384, 78 S.Ct. 819 (Frankfurter, J., concurring). Repeated appeals to a friend’s sense of loyalty and compassion are the types of compelling induce *510 ments that support an instruction on entrapment. See United States v. Hodge, 539 F.2d 898, 906 (6th Cir.1976) (“[The defendant], by his undisputed testimony, effectively raised an entrapment defense by arguing that he had not previously dealt in drugs but was only, just this one time, responding to the plea of a friend in trouble.”); see also United States v. McGill, 754 F.3d 452, 459 (7th Cir.2014) (“Government exploitation of friendship can constitute improper inducement”).
As the majority opinion acknowledges, “[t]he question of entrapment is generally one for the jury, rather than for the court.” Mathews, 485 U.S. at 63, 108 S.Ct. 883. I believe that Allebban has provided sufficient evidence from which a reasonable jury could conclude that the government entrapped him into preparing false receipts. Therefore, he was entitled to a jury instruction on entrapment. I respectfully dissent from Part III of the majority opinion, and would reverse the judgment of the district court and remand for further proceedings.